**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

---

STATE OF OKLAHOMA, ex rel.,
JOHN DOAK, Insurance Commissioner,
as receiver for Imperial Casualty and
Indemnity Company,

       Plaintiff-Appellant,

v.

ACRISURE BUSINESS
OUTSOURCING SERVICES, LLC;
ACRISURE, LLC; CAMPBELL
MANAGEMENT GROUP, INC.,

       Defendants-Appellees,

and

PATRICK MONTGOMERY;
EMPLOYMENT TRADITIONS, INC.;
PEOPLE ESSENTIALS, INC.; E.T. 2,
INC.; E.T. 4, INC.; E.T. 6, INC.; E.T. 10,
INC.; CFC I/ET, INC.; CFC II/ET, INC.;
MONTGOMERY, INC.,

       Defendants.

_____

STATE OF OKLAHOMA, ex rel.,
JOHN DOAK, Insurance Commissioner,
as receiver for Park Avenue Property and
Casualty Insurance Company,

       Plaintiff-Appellant,

v.

ACRISURE BUSINESS

No. 12-6179
(D.C. No. 5:11-CV-00863-C)
(W.D. Okla.)

No. 12-6180
(D.C. No. 5:11-CV-00864-C)
(W.D. Okla.)

OUTSOURCING SERVICES, LLC;
ACRISURE, LLC; CAMPBELL
MANAGEMENT GROUP, INC.,

          Defendants-Appellees,

and

PATRICK MONTGOMERY;
EMPLOYMENT TRADITIONS, INC.;
PEOPLE ESSENTIALS, INC.; E.T. 2,
INC.; E.T. 4, INC.; E.T. 6, INC.; E.T. 10,
INC.; CFC I/ET, INC.; CFC II/ET, INC.;
MONTGOMERY, INC.,

          Defendants.

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

---

      Plaintiff, the State of Oklahoma, on behalf of John Doak, its Insurance Commissioner and the receiver for Imperial Casualty and Indemnity Company and Park Avenue Property and Casualty Insurance Company (collectively the Insurers), appeals from the district court's orders granting summary judgment in favor of defendants Acrisure Business Outsourcing Services, LLC (Acrisure Services),

[*]       After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Acrisure, LLC (Acrisure), and Campbell Management Group, Inc. (Campbell) (collectively the ABOS defendants). Mr. Doak also appeals the orders that denied his motions to: (1) amend the scheduling order and reconsider that order; (2) conduct additional discovery to respond on summary judgment; and (3) remand the case to state court under the *Burford* abstention doctrine. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the orders.

## I. BACKGROUND

Employment Traditions, Inc. (Traditions), a professional employer organization, provided employee services to its customers in return for a fee. Patrick Montgomery was the president and sole shareholder of Traditions. As part of its services, Traditions purchased high-deductible worker's compensation insurance from the Insurers for the benefit of its customers' employees. Under the high-deductible policies the Insurers covered catastrophic losses and Traditions was self-insured for minor injuries. The Insurers were responsible for administering all of the benefits for worker's compensation claims, including the payment of claims for non-catastrophic injuries. In addition to paying premiums and administrative expenses, Traditions was obligated to reimburse the Insurers for all of the non-insured claims paid by the Insurers to its customers' employees. Beginning in 2005, Traditions fell behind in its payments to the Insurers.

In late 2008, Traditions began negotiations to sell some of its assets to Campbell, a Michigan corporation that operated a commercial insurance agency.

Campbell conducted the due diligence for the transaction.  The parties eventually agreed on a deal that covered 126 customer accounts, or 51.6% of Traditions' assets. To that end, on December 31, 2008, Campbell sold all of its assets, including Acrisure Services, a Michigan limited liability company, to Acrisure, a Michigan limited liability company that was formed expressly for the purpose of acquiring Campbell.  Later that same day, Acrisure Services purchased approximately 51% of Traditions' accounts for $4.5 million.  Acrisure guaranteed the promissory notes used to fund part of the purchase of Traditions.  At or about the time of the transaction, Traditions' employees began to tell its customers, vendors, and creditors that its name would change to Acrisure Services effective January 1, 2009.  Following the closing, Acrisure Services hired 33 of Traditions' 38 employees, including Mr. Montgomery.

Not long after the transaction closed, the Insurers went into liquidation. Mr. Doak eventually filed two separate state court suits in which he alleged more than $9 million in damages on behalf of each Insurer for:  (1) breach of contract against Traditions; (2) negligence and breach of fiduciary duty against Mr. Montgomery; (3) constructive fraudulent transfer against Traditions, Mr. Montgomery, and the ABOS defendants; (4) successor liability against the

ABOS defendants; and (5) a corporate-veil-piercing claim against Traditions and

Mr. Montgomery.  The defendants removed the cases to federal court.[1]

## II.  PROCEDURAL ORDERS

### A.    *The Scheduling Order*

The scheduling order was entered on September 1, 2011.  March 1, 2012, was

designated as the deadline for completion of discovery and other matters such as

dispositive motions.  In October 2011, Acrisure and Campbell moved for judgment

on the pleadings on the grounds that they were not parties to the purchase agreement

and therefore could not be liable as a matter of law.  Mr. Doak filed an unopposed

motion for extension of time to respond.  In his response filed on December 2,

Mr. Doak argued for more time to conduct discovery to determine whether Acrisure

and/or Campbell were the alter-egos of Acrisure Services or had received some of

Traditions' assets.  The district court denied the motion for judgment on the

pleadings on January 30, 2012.

In the meantime, on November 11, 2011, the ABOS defendants served written

discovery, and in early February 2012, they served a notice to depose Mr. Doak.

Although Mr. Doak eventually responded to the requests for admissions, he never

---

[1]     The district court certified its summary judgment orders as final under
Fed. R. Civ. P. 54(b).  As part of the certification order, the court acknowledged the
entry of a consent judgment in favor of Mr. Doak on his claims against defendants
Employment Traditions, Inc., People Essentials, Inc., E.T. 2, Inc., E.T. 4, Inc., E.T. 6,
Inc., E.T. 10, Inc., CFC I/ET, Inc., CFC II/ET, Inc., and Montgomery, Inc.  The court
also entered a judgment that dismissed Mr. Doak's remaining claims against
Mr. Montgomery without prejudice pursuant to a stipulation.

responded to the interrogatories or requests for production of documents nor did he appear for deposition.

On February 15, 2012, just two weeks before the discovery deadline, Mr. Doak moved to amend the scheduling order to extend all of the deadlines by sixty days. The motion was filed nearly six weeks after Mr. Doak's expert witness list and reports were due and the same day that his witness and exhibit lists were due.

As grounds, Mr. Doak cited the "pendency of Acrisure and Campbell's Motion for Judgment on the Pleadings," Aplt. App. at 162, as well as the administrative and litigation demands placed on the "small firm retained by [Mr. Doak] to act as assistant receiver," *id*. at 161. According to Mr. Doak, his lawyers needed additional time to confer with the assistant receiver to not only respond to the past-due discovery, but to "coordinat[e] with the assistant receiver regarding the preparation of discovery to Defendants." *Id*. at 162. Although he did not say so Mr. Doak suggested that his counsel intended to serve discovery before the end of January 2012, but were unable to do so because of the unexpected death on January 24 of a lawyer's relative. He stated that he did not move for an extension on January 24 because opposing counsel led his lawyers to believe that they would agree to an extension.

The ABOS defendants objected on the grounds that Mr. Doak "has failed to cooperate in discovery or comply with the Court's scheduling Order and the actions of his counsel indicate [he] does not intend to comply." *Id*. at 195. They disavowed

- 6 -

having agreed to an extension and insisted that they were willing only to discuss an extension of time for Mr. Doak to respond to the past-due discovery.  On March 1, 2012, while Mr. Doak's motion was pending, the ABOS defendants filed for summary judgment.  On March 2, the district court denied Mr. Doak's motion to extend the deadlines.

"A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment Discussion).

"We review a court's refusal to enter a new scheduling order for abuse of discretion."  *Rimbert v. Eli Lilly & Co*., 647 F.3d 1247, 1254 (10th Cir. 2011).  "An abuse of discretion occurs when the district court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."  *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994) (internal quotation marks omitted).  *See also Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (recognizing that "appellate courts that have applied Rule 16 have afforded wide discretion to district courts' applications of that rule").

There was no abuse of discretion.  As the district court explained in its order, Mr. Doak "has not shown good cause for extension:  In addition to continuously

missing deadlines and failing to respond to discovery requests, [Mr. Doak] misrepresents the pendency of a motion as a basis for extension." Aplt. App. at 330.

On appeal, Mr. Doak argues that his lawyers were overwhelmed by having to respond to the motion for judgment on the pleadings and the discovery requests. But the motion for judgment on the pleadings was not filed until October 21, 2011, nearly two months after entry of the scheduling order and Mr. Doak's response stated that he needed to conduct discovery to prepare a response. There was ample time before the motion was filed and after Mr. Doak responded to have conducted discovery. Nor are we swayed by the argument that the burden of responding to discovery requests that were served in mid-November prevented counsel from conducting their own discovery. Indeed, it appears that the responses were being managed by the assistant receiver's office and thus Mr. Doak's lawyers could have pursued their own discovery. In any event, these "complications" should have been evident long before February 2012, when Mr. Doak filed his motion to extend the deadlines. Like the district court, we are sympathetic to events such as the unexpected death of a family member; however, Mr. Doak was already in the eleventh hour and has never explained why a different lawyer did not prepare any discovery. In short, there was no abuse of discretion.

**B.**     *The Motion to Reconsider and Rule 56(d) Motion*

On March 22, 2012, Mr. Doak filed two motions; the first to reconsider the denial of his motion to extend the deadlines and the second under Fed. R. Civ. P. 56(d) to delay consideration of summary judgment.

As to the motion to reconsider, Mr. Doak argued that the district court misunderstood his original motion to mean that the defendants' motion for judgment on the pleadings was still pending, when what he really meant is that his discovery efforts were delayed while the motion was pending from late October 2011 through late January 2012, when the court denied it.  He stated that it was always his counsel's intention to conduct discovery and explained for the first time that without the information, he "may be unable to advance [his] claims." Aplt. App. at 338.  He also repeated his previous arguments concerning the alleged burdensome discovery, the press of other business, and the relative's death.  According to Mr. Doak, the order "should be reconsidered to prevent the manifest injustice that would result." *Id*. at 334.  Attached to the motion to reconsider were Mr. Doak's proposed interrogatories and request for production of documents.

The district court applied the standard in Fed. R. Civ. P. 59(e) in its analysis and denied the motion.  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion for

reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*.

The denial of a Rule 59(e) motion is reviewed for an abuse of discretion. *ClearOne Commc'ns, Inc. v. Biamp Sys*., 653 F.3d 1163, 1178 (10th Cir. 2011). "A district court abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id*. (internal quotation marks omitted).

Again, there was no abuse of discretion. All of the arguments, with one exception, could have been raised or were raised and considered by the district court. As to the alleged misunderstanding, the court concluded that "[e]ven if [it] had misconstrued the sentence referring to the pendency of the motion in its prior Order, that misconstruction would do nothing to alter [its] prior Order because [Mr. Doak's] failure to conduct discovery remains constant, which was the basis for denying the extension." Aplt. App. at 451. Nor can we say that there was manifest injustice. The simple fact is that Mr. Doak's lawyers never propounded a single interrogatory, request for admission, or document request from September 1, 2011 through the discovery cutoff, which was March 1, 2012. Nor did they notice a single deposition.

In support of his Rule 56(d) motion, Mr. Doak incorporated the arguments set forth in the motion to reconsider, and attached the affidavit of a lawyer who repeated the reasons why discovery had not been conducted, and the affidavit of the assistant receiver who stated what evidence was needed to respond on summary judgment.

- 10 -

For all intents and purposes, when the district court denied the motion to reconsider, the Rule 56(d) motion became moot because there was not going to be any discovery. Mr. Doak acknowledges as much when he concedes that "[d]enial of the first motion naturally leads to the denial of the second." Aplt. Opening Br. at 31. He nonetheless presses forward and argues generically that the scheduling order simply did not give him enough time to conduct discovery.

"The general principle of Rule 56([d])[2] is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (brackets and internal quotation marks omitted) (footnote added). Rule 56(d) requires the party opposing summary judgment to file an affidavit "specifi[ying] [the] reasons [why] it cannot present facts essential to justify its opposition." "This includes identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (brackets and internal quotation marks omitted).

---

[2]     The language that appeared in subsection (f) was moved to subdivision (d) "without substantial change." Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments).

"We review a district court's decision denying a Rule 56([d]) discovery request for abuse of discretion." *Id*. "[T]he abuse of discretion standard implies a degree of discretion invested in judges to render a decision based upon what is fair in the circumstances and guided by the rules and principles of law." *Id*. (brackets and internal quotation marks omitted).

Like the affidavit in *Valley Forge*, the affidavits in this case "fall[] short against this yardstick," *id*., because they do not describe why the facts could not have been presented or what steps were taken to obtain the facts.  As the district court explained, Mr. Doak had procedures available to him to obtain the information but never conducted any discovery.  Thus, the court did not abuse its discretion.

### III.  SUMMARY JUDGMENT

*A.*     ***Standard of Review***

Mr. Doak appeals from the grant of summary judgment in favor of the ABOS defendants on his claims for successor liability and fraudulent transfer.  "In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment." *Morris v. Travelers Indem. Co. of Am*., 518 F.3d 755, 758 (10th Cir. 2008).  "In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Shearson Lehman Bros., Inc. v. M & L Invs*., 10 F.3d 1510, 1514 (10th Cir. 1993).  "We review the district court's determinations of state law de novo." *Ayala v. United States*,

49 F.3d 607, 611 (10th Cir. 1995). The district court applied Michigan law to the claim for successor liability without objection from either side and the parties continue to argue that Michigan law applies to this claim on appeal. We agree that Michigan law applies. As to the claim for fraudulent transfer, the court did not decide whether Michigan or Oklahoma law applied because the law is virtually the same in both states and the claim failed regardless of which state law applied. Again, we agree with this approach.

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether summary judgment is proper, we view the evidence in the light most favorable to the non-moving party." *Helm*, 656 F.3d at 1284.

**B.    *Successor Liability***

Under Michigan law,

> where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. . . . (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking . . . ; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Foster v. Cone-Blanchard Mach. Co*., 597 N.W.2d 506, 509-10 (Mich. 1999)

(internal quotation marks omitted).

### 1. First Exception – Assumption of Liability

We agree with the ABOS defendants that there are no facts in the record to

indicate an express or implied assumption of liability and Mr. Doak appears to

concede the issue.  Therefore, the first exception does not apply.

### 2. Second Exception – De Facto Merger

As to the second exception, Mr. Doak argues that there was sufficient evidence

from which a jury might find a de facto merger.  Michigan law recognizes a de facto

merger in instances where:

> (1)  There is a continuation of the enterprise of the seller
> corporation, so that there is a continuity of management, personnel,
> physical location, assets, and general business operations.
> (2)  There is a continuity of shareholders which results from the
> [p]urchasing corporation paying for the acquired assets with shares of
> its own stock, this stock ultimately coming to be held by the
> shareholders of the seller corporation so that they become a constituent
> part of the purchasing corporation.
> (3)  The seller corporation ceases its ordinary business
> operations, liquidates, and dissolves as soon as legally and practically
> possible.
> (4)  The purchasing corporation assumes those liabilities and
> obligations of the seller ordinarily necessary for the uninterrupted
> continuation of normal business operations of the seller corporation.

*Turner v. Bituminous Cas. Co*., 244 N.W.2d 873, 879 (Mich. 1976) (emphasis and

internal quotation marks omitted).

Mr. Doak argues there can be a de facto merger in the context of a cash

transaction.  On the other hand, the ABOS defendants argue that the requirement

of shareholder continuity has been excused only in product liability cases. We need not decide the issue because there is no evidence of two of the other three *Turner* factors.

As to the first *Turner* requirement, it is correct that 33 of Traditions' 38 employees, including Mr. Montgomery, went to work for Acrisure Services. Setting aside the fact that there were several employees who were not hired, Mr. Doak presented no evidence to rebut the affidavit of Acrisure Services' secretary/treasurer that the company had its own managers who had never been affiliated with Traditions, as well as its own offices, equipment, and business operations.

As to the third *Turner* requirement for a de facto merger, the district court found that a letter from Traditions' lawyer stating the company ceased operations on December 31, 2008, weighed in Mr. Doak's favor. But as the court found, "[t]he remaining factor[], however, do[es] not." Aplt. App. at 731. There was no evidence that Acrisure Services assumed any of the liabilities or obligations of Traditions. To the contrary, rather than assuming the obligations and liabilities of Traditions' contracts, the undisputed evidence was that within two weeks of the closing, Acrisure Services executed its own, new contracts with all of Traditions' customer accounts that were part of the sale.

According to Mr. Doak, the district court erred by adopting an all-or-nothing approach to its determination of whether there was a de facto merger. His apparent

argument is that it is not necessary to meet all four *Turner* requirements to have a de facto merger.  Even if we accept Mr. Doak's argument that a stock purchase is not required, he has not cited any authority that only some, but not all, of the remaining requirements need to be met.  For example, taken to its logical conclusion this argument would mean that a de facto merger occurred simply in the face of a seller corporation ceasing its ordinary business operations shortly after the sale.  Michigan law requires more.  *See Turner*, 244 N.W.2d at 879.

### 3. *Third & Fourth Exceptions – Fraudulent Transaction or Lack of Good*

The third and fourth exceptions are where the transaction is fraudulent or some of the elements of a purchase in good faith are lacking.  The district court found that there was no evidence to substantiate Mr. Doak's arguments that the ABOS defendants should have known that Traditions' liabilities significantly outweighed its assets or that Traditions was prohibited from transferring its accounts unless its payments were current.

Mr. Doak raises essentially the same arguments on appeal.  First, he says that it "is unlikely" that one or more of the ABOS defendants did not know about "the contractual obligation [Traditions] had to the [Insurers] not to engage in the sale of more than 50% of its assets without prior authorization."  Aplt. Opening Br. at 38.  In any event, he argues that the ABOS defendants "engaged in the Transaction with full understanding of the abysmal financial condition of [Traditions] and its affiliates."  *Id*.  We agree with the district court's reasoning that Mr. Doak "has no basis for

substantiating th[ese] claim[s]–he can only allege what he believes [the ABOS]

[d]efendants would have known.  Nor does [Mr. Doak] explain how such a contract,

between a third-party and [Traditions] would implicate the [transaction] between

Traditions and [Acrisure Services], and exemplify . . . bad faith."  Aplt. App. at

734-35.

### 4. Fifth Exception – Continuation

The fifth and final exception announced in *Foster* – continuity of enterprise –

is largely the same as the second exception for a consolidation or merger, but has the

additional requirement that "the purchasing corporation holds itself out to the world

as the effective continuation of the seller corporation."  *Foster*, 597 N.W.2d at 510.

We have previously explained the lack of evidence sufficient to satisfy the second

*Foster* exception.  We also agree with the district court that Mr. Doak did not come

forward with any evidence to meet the additional requirement.  Although there was

evidence that Traditions' employees began to disseminate information about a new

name and contact information, Traditions was the seller corporation, not the

purchasing corporation.  The record is devoid of any evidence that any of the ABOS

defendants held themselves out as the effective continuation of Traditions; indeed,

the evidence was to the contrary.

### C.     *Fraudulent Transfer*

To establish a claim of constructive fraudulent transfer, Mr. Doak must show

that

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a
> creditor whose claim arose before the transfer was made or the
> obligation was incurred if the debtor made the transfer or incurred the
> obligation without receiving a reasonably equivalent value in exchange
> for the transfer or obligation and the debtor was insolvent at that time or
> the debtor became insolvent as a result of the transfer or obligation.

Mich. Comp. Laws § 566.35(1); Okla. Stat. tit. 24, § 117.A.  Thus, Mr. Doak was

required to come forward with evidence from which a reasonable trier of fact could

find that the $4.5 million received by Traditions was not "a reasonably equivalent

value" for slightly more than 50% of its accounts *and* that Traditions became

insolvent when the transaction closed or became insolvent as a result of the sale.

As the district court noted, "as the party challenging reasonably equivalent

value, [Mr. Doak] bears the burden of proof on this issue, but proffers nothing to

support his contention that [Acrisure Services] failed to pay reasonably equivalent

value."  Aplt. App. at 736.  Instead, what Mr. Doak attempted to do was to launch a

*Daubert* challenge[3] to the ABOS defendants' expert opinion that the transfer was

made for at least, if not more, than reasonably equivalent value.  As the court noted,

the *Daubert* challenge came well after the deadline and Mr. Doak "cannot do an end

---

[3]     Pursuant to Federal Rule of Evidence 702, a district court must assess
proffered expert testimony to ensure it is both relevant and reliable.  *Daubert v.
Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

run on this deadline by masquerading a *Daubert* motion as a response to summary judgment." *Id.* More to the point, we agree with the court that the expert opinion is irrelevant because Mr. Doak did not come forward with any evidence that Traditions received less than reasonably equivalent value or that it was insolvent at the time of the transfer, "the two elements [Mr. Doak] must establish to succeed on his constructive fraudulent transfer claim." *Id.*

On appeal, Mr. Doak devotes several pages of his brief to pressing the *Daubert* issue. But as the district court explained, even if the expert's opinion is ignored, Mr. Doak failed in his burden to present any evidence that Traditions was insolvent at the time of the transfer and that the price paid was not reasonably equivalent value. The same flaw exists on appeal.

## IV.  BURFORD ABSTENTION

While the motion for summary judgment was pending, Mr. Doak filed a motion to remand the case to state court under the *Burford* abstention doctrine, which generally recognizes that it may be appropriate for a federal court to abstain in a case where a decision from the federal court may frustrate the purpose of a complex state administrative system. *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943).  The district court granted the motion for summary judgment and then denied the motion for remand.

On appeal, Mr. Doak suggests that the district court failed to consider his substantive arguments for abstention and decided instead that the motion was moot in

light of the grant of summary judgment. This argument mischaracterizes the court's

order. Despite finding the motion was moot, the court nonetheless proceeded to

analyze the merits and found that abstention was unwarranted. We find no error.

The leading case in this circuit concerning *Burford* abstention is *Grimes v.*

*Crown Life Insurance Company*, 857 F.2d 699, 704-05 (10th Cir. 1988), in which we

held the following factors relevant to determine whether abstention is proper:

> (1) whether the suit is based on a cause of action which is
> exclusively federal . . . (2) whether the suit requires the court to
> determine issues which are directly relevant to the liquidation
> proceeding or state policy in the regulation of the insurance
> industry . . . (3) whether state procedures indicate a desire to
> create special state forums to regulate and adjudicate these
> issues . . . and (4) whether difficult or unusual state laws are at
> issue.

(citations omitted).

Since our decision in *Grimes*, the Supreme Court has narrowed application of

the *Burford* abstention doctrine. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706,

728 (1996) ("*Burford* represents an extraordinary and narrow exception to the duty of

the District Court to adjudicate a controversy properly before it." (internal quotation

marks omitted)); *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans*,

491 U.S. 350, 361 (1989) (*NOPSI*) (*Burford* abstention is proper only "when there

are difficult questions of state law bearing on policy problems of substantial public

import whose importance transcends the result in the case . . . or [] where the

exercise of federal review of the question in a case and in similar cases would be

- 20 -

disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." (internal quotation marks omitted)).

But we need not decide whether the more narrow tests of *Quackenbush* and *NOPSI* apply, because even applying the broader test in *Grimes*, which Mr. Doak argues this court should do, the district court correctly denied the motion to remand. Like the district court, we acknowledge that the first *Grimes* factor weighs in favor of Mr. Doak because the suit is not based on any federal causes of action. We are less convinced that the district court correctly found that the third *Grimes* factor favors Mr. Doak. It does not matter, however, because the second and fourth factors are not present.

The second *Grimes* factor does not apply because the case has nothing to do with the liquidation of the Insurers. Further, as the ABOS defendants point out, they have "not asserted a counterclaim against [Mr. Doak] and, thus, ha[ve] not subjected [themselves] to the statutory regime of the insolvent [Insurers'] creditors." Aplee. Br. at 19.

Mr. Doak argues that a motion in limine to exclude a spreadsheet raises a challenge by the ABOS defendants "related to the rights and liabilities of the receiver . . . that implicated even the [r]eceiver's standing to bring the action." Aplt. Opening Br. at 15. This is incorrect. As explained by the ABOS defendants, this "evidentiary challenge[] did not substantively challenge the administrative scheme of insurance in Oklahoma – it reiterated ABOS' objection that [Mr. Doak]

- 21 -

should not, in fairness, be allowed to utilize evidence that was the focal point of ABOS' discovery requests to which [Mr. Doak] failed to respond." Aplee. Br. at 17. Further, the motion to exclude was based on its alleged unreliability and trustworthiness of the spreadsheet. Both contentions are borne out by the record. Aplt. App. at 586; Aplee. Supp. App. at 45. Thus, there is no merit to Mr. Doak's argument that the case has anything to do with Oklahoma state policy in the regulation of the insurance industry.

The fourth *Grimes* factor, which requires the presence of difficult or unusual questions of state law, is entirely lacking. The issues were neither complex nor difficult. As the district court explained, "[d]espite the involvement of insolvent insurers, this case entails breach of contract, negligence, and breach of fiduciary claims–none of which present 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result' or raise 'a hotly disputed question of state law.'" Aplt. App. at 718 (quoting *NOPSI*, 491 U.S. at 361).

## V.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Mary Beck Briscoe
Chief Judge